## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

KAYCE R. POWELL                                                    PLAINTIFF

v.                                                          No. 5:22-cv-85-BJB

CABINET FOR HEALTH AND FAMILY                              DEFENDANTS
SERVICE, ET AL.

### MEMORANDUM OPINION & ORDER

Kayce Powell—a mother of two and former staff attorney for Kentucky's Cabinet for Health and Family Services—claims she lost her job and nearly lost her children thanks to a child-abuse investigation and an HR disciplinary process gone awry. The two bled into each other and eventually, she contends, crossed constitutional lines. She has sued virtually every government employee involved with either process for infringing her due-process rights to familial integrity and continued employment. But Powell's disturbing factual allegations—even taken as true and construed in her favor—do not amount to a violation of her due-process rights under federal law. Whether these allegations would create liability under state law is another question—and one on which this Court should and will defer to the state courts. So the Court grants the motions to dismiss Powell's federal claims, declines to exercise supplemental jurisdiction over the remainder of the case, and dismisses the state-law claims without prejudice to Powell refiling in state court.

## I.    Allegations

### A. June 29 Incident

An early-morning incident on June 29, 2021 started the cascade of events described in the Complaint, whose factual allegations the Court must accept as true at this stage. Powell and her husband Daniel planned to get a divorce but were still living together with their sons, then seventeen and seven years old. Complaint ¶¶ 21, 24. The older son, Landon, had been "sneaking out of the house," "stole [Powell's] car and left the house in the middle of the night," and had been arrested for assaulting Powell in May 2021. ¶ 21. Following his release from juvenile detention on June 20, 2021, he was ordered (apparently by the juvenile court) to attend therapy, consult with a social worker (Stephanie Conley), and wear an ankle monitor until his next court appearance. ¶¶ 21–23.

Around 1:00 AM on June 29, Daniel called 911 "alleging that [Landon] was yelling[] at both of his parents, and was out of control." ¶ 58. Landon woke Powell

to tell her that Daniel had called the police, ¶ 57, and both Powell and Daniel were outside the house when Deputy Werner of the Trigg County Sheriff's Department responded to the call.  ¶¶ 59–60.  Though Powell alleges that Daniel had assaulted her earlier in the evening, ¶¶ 26–40, 53, she did not report anything about that incident to Werner, ¶ 61.  Powell and Landon went back inside roughly twenty minutes later, and Werner stayed until Daniel got a ride to a hotel.  ¶ 65.  Despite everything that led to Daniel's 911 call, Werner's time at Powell's home "was really uneventful, and [Powell] did not really think anything more about the call" until social workers from the Cabinet showed up at her house.  ¶ 66.

### B. Child Abuse Allegations and Investigation

Deputy Werner filed a Child Abuse Report about the incident.  ¶ 75; Child Abuse Report (DN 48-1).  Tracy Sturgill and Stephanie Conley—both social workers with Kentucky's Cabinet for Health and Family Services—followed up at Powell's home on July 1.  Complaint ¶¶ 66–67.  Conley and Sturgill told Powell that they were opening an investigation into the incident and that a judge wanted Landon and Powell to take drug and alcohol tests—likely because the Child Abuse Report indicated that both had been "manifestly under the influence" during the June 29 incident.  ¶ 67; Child Abuse Report at 5.

Powell was willing to take the test but concerned that THC might show up.  Complaint ¶ 69.  She explained that she had legally purchased marijuana-laced "PTSD gummies" in Illinois and had taken them nightly "to wean herself off of antidepressants."  ¶ 68.  She provided the social workers—and sent to her supervisor at the Cabinet, Jennifer Clay—a copy of the receipt for the gummies and proof of the last time she had filled her antidepressant prescription.  *Id.*  Conley suggested that the THC might not show up and assured her that "cases are never opened or substantiated solely on a positive THC test" but reminded her that refusal to take the test "would be considered a positive test by the Cabinet."  ¶ 69.  Powell tested positive for both alcohol and THC.  ¶ 80.

Five days later, Powell and Landon attended a juvenile-court hearing regarding his assault charge.  ¶ 72.  During that hearing, Trigg County Attorney Randall Braboy told the court about Werner's Child Abuse Report and provided Powell with a copy.  ¶¶ 73–74.  Conley noted that "she was in the process of filing [removal] petitions" but would have "nothing to file a petition on" if Powell "had already placed a lock on her refrigerator" as required by a July 1 prevention plan Conley issued to address ongoing concerns about Landon's substance abuse and the safety of both boys.  ¶ 76.  Powell says that she had already installed the lock.  ¶ 82.  Nevertheless, the County Attorney indicated that he planned to "move to have [Landon] placed with the Cabinet."  ¶ 77.  During a recess, Landon's attorney

(appointed by the court to handle his assault charge) and Conley "attempt[ed] to get Landon to say that [Powell] had a drinking problem, and needed help." ¶ 78.

Conley, on behalf of the Cabinet, filed an unsworn emergency petition to remove both children from the care of Powell and Daniel the following day. ¶ 79. Powell insists that other than her testing positive for alcohol and THC, "[a]ll other assertions were simply untrue, and misleading at best." ¶ 80. The purported basis for removal was Powell's alleged "failure and refusal to cooperate with the Cabinet's prevention plan," which Powell insists she had "completed within 48 hours of the initial visit." ¶ 82. The Trigg County district court denied the emergency removal petition but scheduled a temporary removal hearing for July 13, 2021. ¶ 90. "At the start, and prior to any form of adjudication," Meg Hicks, the court-appointed lawyer representing the children in the removal proceedings, "tr[ied] to convince [Landon] to voluntarily recommit to the Cabinet." ¶ 97.[1]

Powell and her lawyer attended the July 13 hearing and requested a continuance. ¶ 91. The court explained that it had denied the emergency petition because Conley had not sworn to it as required by statute. ¶ 92. The court, however, allowed Conley to supplement the petition with an affidavit, *id.*, and granted Powell's request for a continuance after taking testimony from Deputy Werner. ¶ 93. During cross-examination, Werner admitted that neither Powell nor "anyone else" at the house on June 29 was "manifestly under the influence"—contradicting his account in the Child Abuse Report. ¶ 95. Powell also requested, and the court ordered, that the Commonwealth turn over Werner's bodycam footage from that evening. ¶ 96. Finally, the court placed Powell "on a 24/7, SCRAM monitor, which would go off at random every 3 to 4 hours, and [Powell] had to blow in the device, while it took a picture of [her]." ¶ 98. Powell had to carry the SCRAM (secure continuous remote alcohol monitor) device with her for five weeks as a "condition precedent, for the minor children to remain in [her] care." ¶¶ 98–99. Because of this monitor, Powell had to cancel plans to take her seven-year-old son to the Venture River water park before the start of the school year. ¶ 100. She also had to step out of a long school-registration line "in order to locate a quiet discreet place to blow into the SCRAM monitor." *Id.*

Powell moved to dismiss the unsworn emergency petition on August 10, but County Attorney Braboy submitted Conley's sworn affidavit in support of the petition. Conley signed it on July 24—the day after she'd quit her job with the Cabinet. ¶ 109.

---

[1] Powell refers to Hicks as "Defendant Hicks" in the Complaint, ¶¶ 97, 133, but did not name Hicks as a defendant.

Given the affidavit, Braboy requested a continuance rather than dismissal, ¶ 111, and Powell renewed her request for Deputy Werner's bodycam footage, ¶ 112.

Powell met her new social worker, Amy Beddow, on August 13 and provided Beddow with copies of everything Powell had already given Conley. ¶ 116. According to Powell, Beddow expressed confusion "as to why anything was filed in court against [Powell], because all workers are given extensive training about how to handle cases[] involving domestic violence victims, and how to ensure that [Cabinet] actions and investigations do[] not ultimately re-victimize the victim." ¶ 117.

Powell finally received Werner's bodycam footage on August 17 and promptly shared it with Beddow. ¶¶ 118–19. Powell alleges that the footage "totally and completely contradicts and calls into question Defendant Werner's [Child Abuse Report] as well as his July 13, 2021, sworn testimony, and his sworn testimony given on October 15, 2021, during the [subsequent] adjudication hearing." ¶ 118.

Despite her previous statements to Powell, Beddow "substantiated" the child abuse report in early September 2021. ¶¶ 129–30. When Powell called, Beddow said "her hands were tied and she was left with no choice," though Powell could always file an appeal under CAPTA—the Child Abuse and Prevention Treatment Act. ¶ 131. Powell's only options for expunging the substantiated petition from her file was to win the appeal or prevail in the final removal hearing, which was scheduled for September 21, 2021. ¶ 134. Powell's supervisor had previously told her that filing a CAPTA appeal would create a conflict of interest by placing Powell in an adversarial position with her employer. ¶ 89.

Just before the September 21 hearing, the Cabinet, Braboy, and Hicks (Landon's attorney) offered to dismiss the substantiated petition if Powell would undergo court-ordered substance abuse evaluation. ¶ 133. Powell refused—insisting that prevailing at the hearing was the only way for her to "defeat the [Cabinet's] Substantiation Finding against her, without having to wait out the more than a year backlog on CAPTA appeals." ¶ 134. At Powell's insistence, the court rescheduled the hearing for October 15, 2021. ¶ 138. Powell "went and paid to have a Substance Abuse Evaluation performed" to avoid the possibility of court-ordered screening. ¶ 139. Powell also filed a CAPTA appeal on October 12, 2021 to challenge the substantiation findings. ¶ 151.

At the October 15 hearing, Braboy renewed his offer of agreed dismissal in "a five-minute speech as to why the case should just be dismissed." ¶ 152. Powell "remained adamant that the Court[] hear the facts and make ruling[s] based upon a full and fair opportunity to be heard." ¶ 153. Deputy Werner testified after Powell objected to Braboy's attempt to submit his previously recorded testimony. ¶¶ 155–56. (The complaint repeatedly asserts that Werner's testimony is refuted by his bodycam footage, *e.g.*, ¶ 157, but does not describe whether or how any inconsistency

emerged during his testimony or cross-examination at the hearing.) Ultimately, the court ruled in her favor and found there was no evidence of abuse or neglect. ¶ 161. On October 26, Beddow sent Powell another letter regarding the June 29 Child Abuse Report—this time saying that the report "was not being substantiated." ¶ 163. Powell's CAPTA appeal was dismissed because the substantiation had been rescinded and Powell had been removed from the child abuse/neglect registry. ¶ 164.

### C. Employment Issues

While this process played out, Powell was also trying to keep her job. As soon as she'd received the emergency petition in early July, she contacted Jennifer Clay, her supervisor, "with unequivocal proof, contradicting the deliberate fabricated information that was used to support the unsworn Emergency Petition, for removal of [Powell's] children." ¶ 85. Clay informed Powell on July 9, 2021 that she had forwarded Powell's information to Wesley Duke, the Cabinet's General Counsel, who had then forwarded it to the Office of Human Resources Management. ¶ 86. The Cabinet placed Powell on paid suspension pending a special investigation on July 16. ¶ 102. And when Powell asked about the special investigation in early August, Clay told her that she believed that human resources "was just waiting to see how things played out in the court proceedings" related to the emergency removal petition. ¶ 114. Powell continued to communicate with Clay—insisting that the case would have been dismissed on August 10 if the other side had shown up, ¶ 115, and expressing optimism when Beddow told her that the case should not have been filed against her in the first place, ¶ 117.

Powell received her first "intent to dismiss letter" from the Cabinet on October 6, 2021. ¶ 141. The letter rested on allegations from the Child Abuse Report, which had been substantiated by Beddow in September. ¶ 141. Powell contacted James Inman, who worked in human resources, to rebut many of the factual allegations in the letter and to demand a pretermination hearing. ¶ 149. The hearing was scheduled for October 21—a week after Powell's child-abuse hearing. ¶ 150. After Powell prevailed in the child-abuse hearing, she requested a continuance of the pretermination hearing, but Inman cancelled it instead. ¶¶ 161–62. In December, the Cabinet rescinded its pending intent-to-dismiss letter. ¶ 162.

Powell received a second intent-to-dismiss letter on December 9, 2021. ¶ 162. This letter rested on Powell's admitted use of marijuana-laced gummies in violation of the Cabinet's drug-free workplace policy. ¶¶ 166–67. Powell contested many of the factual details within the letter, such as Deputy Werner's characterization of the June 29 incident as a domestic-violence call. ¶ 170. Nevertheless, she admitted to purchasing "PTSD gummies" and taking them for seven nights in order to wean herself off antidepressants. ¶ 169. She suggests that the Cabinet inappropriately shared information that she'd provided to social workers during their July 1 visit to

her home, ¶ 173, but acknowledges she sent at least some of that same information—including the receipt for the gummies and her explanation—directly to her supervisor, ¶ 68. Following a pretermination hearing, the Cabinet terminated Powell's employment. Termination Letter (DN 48-11). Powell has filed an appeal to the Kentucky Personnel Board, which remains pending according to the record in this case. DN 13-1 at 29 (citing *Powell v. Cabinet for Health & Family Services*, Appeal No. 2022-040).

### D. This Case

Powell filed this lawsuit in July 2022—naming nearly every state employee she encountered throughout this process. Powell is suing the "DCBS Defendants" (Stephanie Conley, Amy Beddow, Tracy Sturgill, Kim Johnson, and Mary Baize), Wesley Duke, Jennifer Clay, Jared Werner, and Randall Braboy for violation of her procedural and substantive due process rights to familial integrity. ¶¶ 210–19 (Count I). She is also suing Duke, Clay, and the "HR Defendants" (James Inman, Howard Klein, Jerald Crawford, Gloria Fuqua, and Tresa Shaw) for violation of her procedural and substantive due process rights to continued employment. ¶¶ 220–30 (Count II). And she has brought state-law claims against many, though not all, of these defendants for abuse of process, the tort of outrage, defamation, and intentional infliction of emotional distress. ¶¶ 231–70. Powell brings all these claims against the defendants in their official and individual capacities.

Six groups of defendants filed separate motions to dismiss. Jennifer Clay was the first to be served and filed her motion to dismiss (DN 13) nearly two months before the others began filing. The day before Powell responded to Clay's motion, the HR Defendants, the Cabinet itself, the DCBS Defendants, and Duke filed materially identical motions to dismiss. *See* DNs 19, 20, 21, and 22, respectively. Werner and Braboy separately answered Powell's complaint (DNs 26 & 27) and then filed a joint motion to dismiss (DN 36, which the Court construes as a motion for judgment on the pleadings, *see Samineh Mesbah v. Univ. of Louisville*, 3:22-cv-567, 2023 WL 6050232, at *4 (W.D. Ky. Sept. 15, 2023)). Powell responded to Clay's motion individually, DN 25, but filed a consolidated response to the subsequent motions, DN 48. She indicated that she never meant to sue the Cabinet itself and agreed that the Cabinet's motion to dismiss (DN 20) could be granted as unopposed. DN 48 at 1. She also conceded that the claims against Tracey Sturgill could be dismissed. *Id.* at 22. In response to Defendants' exhaustion arguments, Powell filed a motion to hold the litigation in abeyance until the state administrative proceeding has concluded. DN 67.

At an August 23, 2023 hearing on these motions, Powell abandoned her claims against all remaining unnamed defendants and withdrew her motion to strike (DN 68) Werner and Braboy's motion to dismiss (DN 49). At that hearing, the Court allowed Powell two weeks to call the Court's attention to specific authorities that

support the notion that the defendants violated clearly established law. On September 7, Powell filed (without comment) a document that combined a number of judicial opinions and legal filings from other cases (DN 71) as well as a motion to withdraw as counsel (DN 72), which remains pending. Defendants filed responses (DNs 74 & 75), and in a status conference, the parties agreed (DN 79) that the motion to dismiss was fully briefed and could be resolved independent from the motion to withdraw as counsel.

## II.   Federal Claims

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts must accept factual allegations as true, they need not accept "legal conclusions." *Id.* A claim's legal requirements provide an important framework for a complaint, but a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. A claim is plausible only if the complaint contains factual allegations supporting each of its "material elements." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009).

### A. Official-Capacity Claims

Defendants (with the exception of Deputy Werner) first assert a sovereign-immunity defense against Powell's official-capacity claims. DN 13-1 at 9–10; DN 19-1 at 9–10; DN 21-1 at 9–10; DN 36 at 15–17. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, "[i]t is a suit against the State itself." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985)). "The sovereign immunity guaranteed by [the Eleventh] Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). This "is a true jurisdictional bar that courts can—but are not required to—raise *sua sponte* at any stage in litigation, and, once raised as a jurisdictional defect, must be decided before the merits." *Id.*

Clay, Inman, Klein, Crawford, Fuqua, Shaw, Conley, Beddow, Sturgill, Johnson, Baize, and Duke work or worked for the Cabinet for Health and Family Services, which is a subdivision of the executive branch of the Commonwealth of Kentucky and is therefore entitled to sovereign immunity. *See* KY. REV. STAT. §§ 12.020(II)(6), 12.250(6); *see also, e.g.*, *Lisack v. Nat. Res. & Env't Prot. Cabinet*, 840 S.W.2d 835, 837 (Ky. Ct. App. 1992). Because the Cabinet has not consented to suit

in this case and is not subject to a statutory waiver of immunity, Powell's official-capacity claims against anyone who worked for the Cabinet must be dismissed.[2]

Braboy is a prosecutor in the Trigg County Attorney's office and is entitled to sovereign immunity under the Eleventh Amendment when acting on behalf of the Commonwealth. Kentucky has established "a unified prosecutorial system" in which county attorneys act as agents of the Commonwealth. *Rogers v. Hill*, No. 4:05-cv-35, 2005 WL 1287415, at *2 (W.D. Ky. May 31, 2005) (citing KY. REV. STAT. §§ 15.700, 15.725(2)). Because Braboy represented the Commonwealth in the proceeding at issue here, "the suit against [him] in [his] official capacity is to be treated as a suit against the state." *Pusey v. City of Youngstown*, 11 F.3d 652, 657–58 (6th Cir. 1993). Powell's official-capacity claims against Braboy thus fall beyond this Court's jurisdiction.[3]

Alone among the defendants, Deputy Werner relied on the absence of vicarious liability, rather than the existence of immunity, to defend against Powell's official-capacity claims. These are effectively claims against Trigg County. *See Graham*, 473 U.S. at 165–66. A county or municipality "may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694–95 (1978)). Powell hasn't "point[ed] to a municipal 'policy or custom' [to] show that it was the 'moving force behind the constitutional violation.'" *Monell*, 436 U.S. at 694. Nor has she plausibly alleged any constitutional violation, as discussed below. *Lucas*, 753 F.3d at 622 ("There can be no liability under *Monell* without an underlying constitutional violation."). So these claims against Werner also fail as a matter of law.

### B. Familial Integrity

Powell argues that "defendants … unlawfully substantiated [a] finding of neglect and abuse against [Powell], all the while knowing that there was no merit to such action but which forced [Powell] and her family to live in fear for their safety." Response to Clay (DN 25) at 20; *see also* Omnibus Response (DN 48) at 32. In doing so, the Defendants "drag[ged]" her "family through court proceedings for months, based off an unsworn petition, containing nothing but false trumped-up allegations,

---

[2] Powell has not requested injunctive relief, so *Ex parte Young*'s exception to sovereign immunity does not apply. *See* 209 U.S. 123 (1908).

[3] So do the individual-capacity claims against him. Braboy is entitled to absolute prosecutorial immunity from § 1983 claims for acts he undertook "as an advocate." *Imbler v. Pachtman*, 424 U.S. 409, 430, n.32 (1976). Because "absolute immunity defeats a suit at the outset," *id.* at 419, n.13, Powell's personal-capacity claims against Braboy must be dismissed as well.

that were discredited even before the petition was filed." *Id*. at 22.  She insists that the Cabinet "fully intended to remove [her] children without giving an opportunity to be heard, solely based on a fabricated [Child Abuse Report], and an unsworn petition filed by Defendant Con[ley], that was riddled with nothing but lies." *Id*. at 24.  This, according to Powell, violated her due-process right to familial integrity.  *See generally Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (plurality op.) (Due Process Clause protects "fundamental liberty interes[t]" "of parents in the care, custody, and control of their children").  Powell's briefs, however, cite no precedent from the Sixth Circuit or otherwise applying this line of authority to similar factual allegations.

These allegations, according to the defendants, "fai[l] to state a claim under § 1983 for a procedural or substantive due process violation of [her] constitutional right to family integrity" because "she was given a pre-deprivation hearing" that the state court resolved in her favor.  DN 13-1 at 23, 25; DN 19-1 at 24, 26; DN 22-1 at 22, 24–25.  As the DCBS Defendants point out, Powell "was never deprived of the right to family integrity.  Her children were never removed from her custody at any point during the course of the DCBS investigation or the court proceeding."  DN 21-1 at 31.  Powell's only "alleged deprivation," according to Deputy Werner, was "having to use a SCRAM monitor for five weeks," which "d[id] not constitute a deprivation of a protected liberty interest … because it did not interfere with her right of custody and control over her children."  DN 36 at 6–7.  And even if the pre-removal process might somehow be construed as a deprivation, Clay and Duke note that they were only tenuously involved.  DN 13-1 at 25; DN 22-1 at 25.

"[T]he Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship." *Kottmyer v. Maas*, 436 F.3d 684, 689–90 (6th Cir. 2006) (citing *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 27 (1981); *Troxel*, 530 U.S. at 65–66 (plurality opinion); *Lehr v. Robertson*, 463 U.S. 248, 258 (1983); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  Under these binding precedents, "the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." *Kottmyer*, 436 F.3d at 689.  But "the right to family integrity, while critically important, is neither absolute nor unqualified." *Id*. at 690.  "Mere investigation by authorities into child abuse allegations without more," the Sixth Circuit has held, "does not infringe upon a parent's right to custody or control of a child" under the Fourteenth Amendment. *Id*. at 691.

Because Powell has not alleged that her children were ever taken from her or that her control over them was limited, she has failed to state a claim for relief.  Her allegations do not implicate the core "parental right of custody and control over [her] children." *Id*. at 691.  The complaint doesn't describe a child actually removed from his parent's care and custody, *see id*. at 690, or a limitation of a mother's control over her children without a corresponding finding of unfitness, *see Troxel*, 530 U.S. at 67.

Rather, the heart of Powell's constitutional claim concerns "governmental investigation into allegations of child abuse." *Kottmyer*, 436 F.3d at 690. Powell's substantive and procedural due process claims fail because Powell has not alleged that any defendant ever compromised (as opposed to threatened) her right to custody or control over her children. She alleges that social workers *attempted* to convince Landon to voluntarily commit to the Cabinet, and that Deputy Werner's fabrications led to *her* being placed "on a SCRAM monitor for five weeks" and on a "family restriction on contact and communications between the parties." Complaint ¶ 213(a)–(b).[4] The SCRAM monitor, moreover, prevented her from taking her younger son to an amusement park and forced her to step out of a long line at his school. ¶ 100. Powell also points out that the HR Defendants "sent the first Intent to Dismiss letter" before she'd had a chance to defend herself in the child-abuse hearing, ¶ 213(c), that Clay warned her that a CAPTA appeal would create a conflict of interest at work, ¶ 213(d), that she was "placed on a nationwide abuse/neglect registry[] without cause or reason, ¶ 213(e), and that she was "publicly accused of and ridiculed for having a substance abuse problem," ¶ 213(f).

These are serious and troubling (if as yet unproven) allegations. But even accepting them all as true—as the Court must at this stage—they all concern limitations or burdens imposed on Powell herself, not on her custody and control over her children. Because Powell has not alleged an actual separation between her and her children as a result of the defendants' actions, her (substantive and procedural) Due Process claims fail. *See, e.g.*, *Kottmyer*, 436 F.3d at 692; *Schattilly v. Daugharty*, 656 F. App'x 123, 128 (6th Cir. 2016) (interviewing child about suspected neglect without parent's consent not a clearly established constitutional violation); *Palmer v. Adams*, 517 F. App'x 308, 310 (6th Cir. 2013) ("[M]ere institution and continuation of an investigation into abuse allegations does not infringe on [any] right" to familial association).

## C. Continued Employment

Powell next argues that Clay, Duke, and the HR Defendants violated her Due Process right to continued employment, which she describes as her "constitutionally protected liberty interest and right to maintain employment, devoid of any and all threats and harassment for defending herself against false assertions." Complaint

---

[4] Powell's complaint does not explain exactly what she means by "family restriction on contact and communications between the parties." Complaint ¶ 213. But at the hearing, plaintiff's counsel indicated that the state-court judge may have ordered Powell removed from the home for some length of time. DN 68. Powell did not, however, plead that she was ever removed from her home. In fact, her complaint suggests that her children stayed in her care because she agreed to use the SCRAM monitor. ¶ 99.

¶ 221.   She suggests that the drug-related explanation for her termination was a pretext, because "[a]t no time was [Powell] ever under the influence of anything in the 'workplace.'"   ¶ 226.   Rather, she alleges that her "termination was in retaliation against [her] for refusing to agree to a dismissal and for standing up for her right to defend against the false allegations" in the child-abuse investigation.   ¶ 229.   These defendants' actions, she asserts, "can only be the result of a continuous pursuit of federal funding for the Cabinet" or "retaliation" for Powell's decision to file a CAPTA appeal despite Clay's warning about conflicts of interest.   ¶ 227.   And "[a]n employer cannot fire or threaten [her] with termination," Powell maintains, "simply because she did not agree to an agreed dismissal or because she was forced to defend herself against any false substantiated charges for neglect/abuse."   ¶ 228 (citing no caselaw for this proposition).

**1. Substantive Due Process.**   To the extent her claim raises substantive concerns, it fails because "termination of public employment does not constitute a denial of substantive due process." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992).   "[S]ubstantive due process protects the right to pursue an entire profession, and not the right to pursue a particular job." *Engquist v. Oregon Dept. of Ag.*, 478 F.3d 985, 998 (9th Cir. 2007); *see also Bright v. Gallia County*, 753 F.3d 639, 658 (6th Cir. 2014) (lawyer who lost job, but was not barred from practicing, could not bring substantive due process claim).   Because Powell has not alleged that any defendants have prevented her from practicing law, her substantive due process claim fails as a matter of law.

**2. Procedural Due Process.**   Her Due Process claim fares no better when framed in procedural rather than substantive terms.   Courts in the Sixth Circuit "undertake a two-step inquiry when confronted with due process claims." *Freeze v. City of Decherd*, 753 F.3d 661, 664–65 (6th Cir. 2014) (citing *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004)).   "The first step determines whether the plaintiff has a property interest entitled to due process protection.   Second, if the plaintiff has such a protected property interest, this court must then determine what process is due." *Mitchell* 375 F.3d at 480 (cleaned up).   Defendants agree that Powell had a constitutionally protected property interest in her job.   DN 13-1 at 26 (citing *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997)).   The question, then, "is whether [Powell] was afforded all of the process that [s]he was due." *Mitchell*, 375 F.3d at 480.[5]

---

[5] Defendants argue that Powell has "fail[ed] to state a claim" because "a cause of action under 42 U.S.C. § 1983 is not available where a state remedy comports with an individual's procedural due process rights."   DN 13-1 at 27 (citing *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1475 (6th Cir. 1993)).   But this relies on an inapposite line of decisions involving claims that a defendant "deprived [the plaintiff] of property pursuant

"In the context of employment rights, the Supreme Court has explained that 'the root requirement of the Due Process clause' is 'that an individual be given the opportunity for a hearing *before* he is deprived of any significant property interest.'" *Mitchell*, 375 F.3d at 480 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  A pre-termination hearing is an "initial check against mistaken decisions," and is almost by definition not necessarily the last word.  *Loudermill*, 470 U.S. at 545.  "[T]he Supreme Court has held that, depending on the circumstances, a pre-termination hearing, although necessary, may not need to be elaborate, as long as the plaintiff is entitled to a full hearing with the possibility of judicial review at the post-termination stage."  *Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992).

Powell has not pled facts suggesting that the pre- or post-termination procedures afforded her under Kentucky law were constitutionally inadequate. Defendants provided Powell with an intent-to-dismiss letter that spelled out the employment-policy violations she stood accused of and described the evidence being considered.  Complaint ¶ 162; DN 48-10.  That letter provided notice of her statutory right to a pre-termination hearing, which—according to her dismissal letter—she requested and attended.  DN 48-11.  And her dismissal letter described her right to appeal to the state personnel board and included a copy of the required form.  *Id.* Once the administrative-appeals process ends, Powell will have the opportunity to challenge the outcome in state court.  *See* KY. REV. STAT. § 13B.140.  Powell has not alleged that she was denied any of this process; nor has she explained how these procedures are unconstitutional.  So she has failed to state a claim for a violation of her procedural due process right to continued employment.  *See, e.g.*, *Brickner*, 977 F.2d at 237–38 (plaintiff afforded adequate procedural protections through notice of the threat to his job, pre-termination "opportunity to make his position known," and

---

to a 'random and unauthorized act.'" *Mitchell*, 375 F.3d at 483.  And the Sixth Circuit has repeatedly held that a public employee who claims to have been wrongfully terminated following a deficient investigation "was not deprived of h[er] property interest pursuant to a random or unauthorized act."  *Mitchell*, 375 F.3d at 478–79, 483–84; *Lane v. City of Pickerington*, 588 F. App'x 456, 461–62, 465–66 (6th Cir. 2014); *see also Rogers v. 36th Dist. Ct.*, 529 F. App'x 642, 650 (6th Cir. 2013).  Accordingly, Powell is "neither required to plead nor prove the inadequacy of post-termination state law remedies in order to prevail." *Mitchell*, 375 F.3d at 484 (quotation marks omitted).

Defendants also argue that Powell's continued-employment claim "is premature" and should be dismissed because she has not exhausted her "administrative remedies" as required by state law.  DN 13-1 at 29–30 (citing *Goodwin v. City of Louisville*, 215 S.W.2d 557, 559 (Ky. 1948)).  But "[e]xhaustion of state administrative remedies is not a prerequisite to suit under § 1983."  *Waskul v. Washtenaw County Community Mental Health*, 979 F.3d 426, 445 (6th Cir. 2020) (citing *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982)).  So the Court needn't wait on Powell's administrative-appeal process before resolving this case— and denies her request for a stay on that basis.  *See* DN 67.

post-termination judicial review); *McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 457–58 (6th Cir. 2014) (similar).

### III.   State-Law Claims

Although a federal court may retain supplemental jurisdiction over state claims after dismissing federal claims, 28 U.S.C. § 1367(a) & (c), "the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed," *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). "[W]hen a federal court dismisses all pending federal claims before trial, … it is usually best to allow the state courts to decide state issues." *Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021). That course is appropriate here. Powell has asserted claims of abuse of process, "outrage," defamation, and intentional infliction of emotional distress against a host of current and former state employees regarding actions they took in those governmental roles. Absent any remaining federal claims, the Court declines supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(c)(3).[6]

### CONCLUSION

The Court grants the motions to dismiss filed by Clay, the HR Defendants, the Cabinet, the DCBS Defendants, Braboy and Werner, and Duke to the extent they concern federal-law claims. DNs 13, 19, 20, 21, 22 & 36. The Court also dismisses without prejudice Powell's state-law claims and denies as moot her motion to hold this case in abeyance. DN 67.

---

[6] Although this ends the case in this federal district court, Powell is free to refile her state-law claims in state court. The "stop the clock" provision in 28 U.S.C. § 1367(d) continues to toll the state statute of limitations for 30 days following dismissal based on a federal court's decision not to exercise supplemental jurisdiction. *See Artis v. D.C.*, 583 U.S. 71, 75 (2018).