UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**KAYCE R. POWELL**  PLAINTIFF

v.  No. 5:22-cv-85-BJB

**CABINET FOR HEALTH AND FAMILY SERVICE, ET AL.**  DEFENDANTS

### MEMORANDUM OPINION & ORDER DENYING RECONSIDERATION

Following the Court's order granting the Defendants' motions to dismiss and closing this case, DN 80, Kayce Powell filed a pro se motion to "Alter, Amend, Reconsider and/or Vacate" its Opinion—invoking Federal Rule of Civil Procedure 59(e). Motion to Alter Judgment (DN 82) at 1.[1] Rule 59, however, does not provide "an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Rather, Powell's motion "must either clearly establish a manifest error of law or must present newly discovered evidence." *Id*. This is a high bar. Indeed, "[a] 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "Stated differently, the error must be so egregious that an appellate court could not affirm the district court's judgment." *Whitman v. CitiMortgage, Inc.*, No. 6:20-cv-254, 2023 WL 5984290, at *2 (E.D. Ky. Aug. 14, 2023).

*First*, Powell repeatedly contends that the "Opinion only addresse[d] Official Capacity claims." Motion at 2, 17–18, 23. But as the Defendants point out in response to the reconsideration motion, the Opinion expressly addressed each of Powell's federal claims—disposing of the official-capacity claims on immunity grounds and individual-capacity claims on the merits. *See* DN 83 at 4–5; DN 84 at 4–5 (both citing Opinion at 7–12). As a result, no federal claim remains against any defendant.

*Second*, and more substantively, Powell insists that the "Opinion includes a great deal of manifest errors of law and facts, along with overlooked information," which "will result in an extreme manifest injustice to the Plaintiff." Motion at 1. But she fails to "clearly establish" how the Court "disregard[ed], misappli[ed], or fail[ed]

---

[1] The introductory paragraph of Powell's motion mentions Rule 60(b), but the remainder of her motion does not discuss its applicability in any way. Nor does her motion attempt to link its arguments to any of the grounds for reconsideration set forth in Rule 60(b) and none is apparent. So the Court limits its analysis to Rule 59(e).

1

to recognize controlling precedent." *See Engler*, 146 F.3d at 374; *Oto*, 224 F.3d at 606. The only legal conclusion that Powell challenges is the Court's reliance on the Sixth Circuit's decision in *Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006). In *Kottmyer*, the Sixth Circuit clarified that the "right to familial association is not implicated merely by governmental investigation into allegations of child abuse." 436 F.3d at 690. Rather, what matters is whether a state actor deprived a parent of her constitutional right to custody and control over a child. *Id*. Basic principles of causation ask whether the defendant investigator (rather than the state-court judge[2]) caused an actual rather than potential deprivation. Consistent with that principle, this Court's Opinion relied on *Kottmyer* to explain that Powell's claim failed because she did not allege "that her children were ever taken from her or that her control over them was limited" as required to state a familial integrity claim. Opinion at 9.

Powell insists, however, that *Kottmyer* anticipates an exception for cases involving "evidence that the investigation was undertaken in bad faith or with a malicious motive or if tactics used to investigate would 'shock the conscience.'" Motion at 20–21 (quoting *Kottmyer*, 436 F.3d at 689 n.1). Her claim should not have dismissed under *Kottmyer*, she contends, because the complaint alleged that several defendants acted in bad faith. *Id*. But this footnote does not, as Powell suggests, establish a free-standing right against bad-faith child-abuse investigations. Rather, it acknowledges that in some circumstances an investigator's actions might be understood to have caused a court order depriving a parent of custody or control over a child—exposing the investigator to liability despite the intervening court order. Indeed, "while it is generally true that only the court that ordered a child removed from custody can deprive a parent of the right to familial association, there is an exception for when the court order is based on a bad-faith child-services investigation." *Heithcock v. Tennessee Dept. of Children's Services*, No. 15-6236, 2016 WL 11786416, at *4 (6th Cir. Oct. 4, 2016) (citing *Pittman v. Cuyahoga County Dept. of Children and Family Services*, 640 F.3d 716, 729 (6th Cir. 2011)). That does not imply, however, that a bad-faith investigation *automatically* gives rise to liability. The judge in Powell's custody proceeding ruled in her favor and declined to remove her children from the home. If the child remains in the parents' custody, no constitutional deprivation exists regardless of the investigator's good or bad faith.

*Third*, the motion also raises—for the first time—Fourth Amendment and reputational-harm ("stigma-plus") arguments. Motion at 7–13, 23–31. These arrive too late to stand on their own, which is enough to deny reconsideration. *See Engler*, 146 F.3d at 374 ("Rule 59(e) motions are aimed at *re* consideration, not initial

---

[2] An investigator, rather than the judge, would typically be the defendant because (among other reasons) the judge who ordered separation would enjoy absolute immunity for that inherently judicial act. *See Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978).

consideration."). The scope of the new arguments is not entirely clear, either. Powell seemingly contends that some combination of Defendants violated her due-process rights by not only causing her to lose her job and undergo parental-termination proceedings, but also stigmatizing her by placing her name on a child-abuse registry without probable cause. Motion at 24. She argues that the Court missed her stigma-plus theory by "misconstru[ing] the content of" her complaint. Motion at 23. But that is principally because her complaint and motion-to-dismiss briefing never raised this theory.

Even assuming she timely made these arguments, however, they would still have failed. The Supreme Court has held that, in some circumstances, state actors may violate a plaintiff's due-process rights by causing some stigma that operates in connection with a loss of life, liberty, or property. *See Paul v. Davis*, 424 U.S. 693, 701 (1976). As the Sixth Circuit has explained:

> [T]he stigma-plus test is used to analyze a due process claim where the action taken by the state injures the plaintiff's reputation. "The frequently drastic effect of the 'stigma' which may result from defamation by the government ... does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural due process protection of the Due Process Clause." A successful plaintiff must therefore show that the state's action both damaged his or her reputation (the stigma) and that it "deprived [him or her] of a right previously held under state law" (the plus).

*Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501–02 (6th Cir. 2007) (quoting *Paul*, 424 U.S. at 701, 708) (alterations in original). But the loss of rights and reputation alone are not enough: "although the stigma-plus test describes a species of constitutional injury, the plaintiff must still identify some process that [s]he is due." *Hart v. Hillsdale County*, 973 F.3d 627, 644 (6th Cir. 2020) (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003)).

Powell has not identified any constitutionally guaranteed process that the Defendants denied her in connection with the child-abuse investigation. Even assuming it caused her some stigma, it didn't deprive her of a right previously held under state law: the investigatory process ultimately resolved in her favor. *See* Opinion at 9–10.

The Reconsideration Motion is unclear on whether Powell invokes this theory with respect to her employment claim as well. To the extent she does, the argument would fail on this point as well. The stated basis for her termination was not child abuse, but rather cannabinoid use—and Powell doesn't argue that any stigma attaches these days to the use of gummies. And setting to the side whether her job

3

loss (still on administrative appeal) qualifies as the loss of a property right, she nevertheless hasn't alleged the process afforded her under state law is constitutionally deficient. *See* Opinion at 12–13 (concluding Powell's complaint didn't allege a constitutional deficiency in Kentucky's pre- and post-termination procedures). Her motion lists 56 paragraphs in the complaint that allegedly allege how "Defendants have essentially and deliberately ignored all the facts and circumstances" throughout the termination process. Motion at 28. These paragraphs, however, merely attack the Defendants' conduct within the termination proceedings, not the adequacy of the procedural protections themselves. That is not enough.

To state a claim for a procedural due process violation, Powell must show (in addition to the loss of liberty or property) "that the deprivation was accomplished without the process that was due under the law." *Nunn v. Lynch*, 113 F. App'x 55, 60 (6th Cir. 2004) (citing *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004)). "In the context of employment rights, the Supreme Court has explained that 'the root requirement of the Due Process clause' is 'that an individual be given the opportunity for a hearing before he is deprived of any significant property interest.'" *Mitchell*, 375 F.3d at 480 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). "[A] pre-termination hearing, although necessary, may not need to be elaborate, as long as the plaintiff is entitled to a full hearing with the possibility of judicial review at the post-termination stage." *Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992). The pre-termination hearing need only provide an "initial check against mistaken decisions." *Mitchell*, 375 F.3d at 480.

By Powell's own account and documentation, she had a pre-termination opportunity to be heard, is currently engaged in the post-termination hearing process, and will be entitled to judicial review if the post-termination process upholds the agency's decision. Complaint ¶ 162; DN 48-10 (pre-termination letter); DN 48-11 (termination letter); Ky. Rev. Stat. § 13B.140. Powell insists that the pre-hearing process was a sham because the so-called HR Defendants failed to "provid[e] her with a neutral assessment and non-bias[ed] hearing." Motion at 29. She contends (without citing any precedent to this effect) that "a showing of bias or of strong implications of bias is sufficient to show that Kentucky State procedur[es] for handling [her] deprivations would be inadequate." *Id.* at 30. But that is not true where, as here, state law provides her with adequate post-termination procedures—including judicial review. Powell doesn't challenge the "essential ingredients" of a pretermination hearing, that is, "oral or written notice, an explanation of the employer's evidence, and an opportunity for an employee to present his side of the story." *Brickner*, 977 F.2d at 237. "These ... do not require a full evidentiary, adjudicatory hearing, which is the primary function of a post[-]termination proceedings." *Id.* The process is constitutionally adequate so long as it affords an

employee notice and an "opportunity to make his position known." *Id.* at 238; *see also McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 457–58 (6th Cir. 2014) (similar). As explained in the Opinion (at 12–13), Powell's allegations do not state a plausible claim that Defendants' pre-termination actions deprived her of the process due under the federal Constitution.

*Fourth*, nothing in Powell's late-filed affidavit (DN 69) affects the Opinion's reasoning on either her familial-integrity claim or her continued-employment claim. On September 6, after the motion-to-dismiss briefing deadlines had passed and the Court had held a hearing, Powell filed an "affidavit" in opposition to the motion to dismiss. DN 69. The filing consists mostly of screenshots of text messages and an affidavit rehashing the facts in the complaint. The motion to reconsider faults the Court for failing to "reference the Affidavit, or most of the filings throughout." Motion at 3. As an initial matter, the affidavit wasn't properly before the Court: it was both untimely and filed as (in effect) a surreply filed without leave. *Cf.* L. Civ. R. 7.1(g).[3] Even if it were properly before the Court, it wouldn't have changed Powell's failure to state a claim under either constitutional theory.[4]

*Fifth*, the motion objects to the Court's characterization of several facts. But it does not identify any "newly discovered evidence" that was "previously unavailable." *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012). Because "[a] motion under Rule 59(e) is not an opportunity to re-argue a case," a motion to reconsider based on factual issues "must present newly discovered evidence." *Engler*, 146 F.3d at 374. And even if Powell's factual objections were appropriate under the Civil Rules, they don't bear on the legal reasons why Powell's

---

[3] The "affidavit" emerged in quite a roundabout fashion. In briefing the motion to dismiss, Powell filed two exhibits that should've been redacted. DNs 48-1, 48-12. After Powell tried and failed twice to file appropriate versions, DNs 61, 66, the Court struck the exhibits but gave Powell permission to resubmit a fourth time. DN 68. Instead of filing properly redacted versions, however, she filed a factual "affidavit" seemingly aimed at bolstering her factual allegations in response to the motions to dismiss. The new factual allegations filed in response to redaction orders were both unnecessary and inappropriate at the pleading stage, given that the Court would accept all well-pled allegations as true regardless of evidentiary support.

[4] Though the motion to reconsider doesn't raise it expressly, the Court notes that its Opinion did not discuss Powell's 183-page "memorandum" (DN 71) filed after oral argument on the motions to dismiss. During oral argument, the Court had granted Powell permission to identify supplemental authorities on the narrow question whether caselaw clearly established that a violation of state procedures constituted a federal due process violation. DN 68. In response, Powell's previous counsel compiled and filed (without explanation) several judicial opinions, legal briefs, and law-review articles. These lacked any evident bearing on the Court's question or any other aspect of the Court's Opinion.

claims fail. The motion insists, for example, that the child abuse investigation started with a "JC-3 Report" rather than a "Child Abuse Report." Motion at 6. But as the Defendants note, "the name of the report is immaterial to the legal analysis under § 1983," DN 83 at 6, and the two descriptors clearly refer to the same document. This type of arguable factual mischaracterization doesn't warrant reconsideration under Rule 59(e).

*Finally*, the reconsideration request raises several issues regarding Powell's relationship with her lawyer. According to Powell, these concerns emerged after the motions to dismiss had been fully briefed and argued. She expresses frustration with the location of oral argument (which, contrary to her explanation, was held in Louisville, not in Lexington). Motion at 2. She also complains about her lawyer's performance during that hearing—suggesting that she would have countermanded his concessions on at least two points. *Id.* at 2–3, 18. But her dissatisfaction with the hearing doesn't warrant reconsideration. Our adversarial system of justice depends on lawyers' agency to act on behalf of their clients, particularly in civil cases, even when the lawyers' choices prove unsuccessful. Despite her strategic second-guessing, Powell offers no reason why the Court should unspool her lawyer's arguments and allow her, acting pro se, to stitch together new ones. *See, e.g.*, *Holloway v. McLaren*, No. 16-2508, 2017 WL 5202036, at *1–2 (6th Cir. Aug. 30, 2017) (rejecting Rule 59(e) argument that attorney "failed to consult … and inform" plaintiff of filings and deadlines because "a party is generally 'held accountable for the acts and omissions of their chosen counsel.'" (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993)). Even after Powell's former attorney had filed his motion to withdraw, "Plaintiff and Plaintiff's counsel agreed that the motion to dismiss [wa]s fully briefed and [wa]s independent from the motion to withdraw as counsel." *See* Order on Motion to Withdraw as Counsel (DN 79) at 1. So nothing in the record warrants revisiting the motion-to-dismiss briefing or argument based on the motion to withdraw filed thereafter.

None of the legal positions Powell now complains of, moreover, affected the disposition of her complaint in any meaningful way. Powell insists that she "did not agree to withdraw the previously submitted Motion to Strike" Defendants Braboy's and Werner's motion to dismiss because they'd already answered. Motion at 2–3 (citing DN 36). During the hearing, her lawyer withdrew this motion to strike, which was premised entirely on timeliness and a technicality under the Federal Rules. DN 49. The Court would've rejected the motion to strike regardless: as explained during the hearing and in the Opinion (at 6), the Court construed that motion to dismiss as a motion for judgment on the pleadings, which everyone agreed could be considered after an answer. The Court could (and would) have taken the same course even if Powell's lawyer declined to withdraw the motion to strike. And although Powell argues that she never filed a response to Braboy's and Werner's motion to dismiss,

6

she expressly addressed many of their arguments in her omnibus response (DN 48), which was docketed as a response to *all* pending motions to dismiss (DNs 13, 19, 20, 21, 22, and 36). Powell similarly indicates that "she did not agree to the dismissal of the unnamed defendants" and intended to pursue claims against Defendants Conley's and Beddow's supervisor once that person was identified through discovery. Motion at 18 & n.19. Considering her allegations with respect to additional John Doe defendants, however, would not change the reality that Powell had failed to state a claim against any of the Defendants under any theory of liability. So even if Powell had been able to attend the August hearing and countermand the positions her lawyer took, the outcome would have remained the same.

Because nothing in the motion triggers the legal standard for reconsideration, *Engler*, 146 F.3d at 374, the Court denies the motion and declines to disturb its prior ruling and judgment.

Benjamin Beaton, District Judge
United States District Court

November 22, 2023

7